By agreement of the parties the issues in this case were referred by me to a special master, then agreed upon, to take the testimony and report it to me with his findings and conclusions. Before the special master it was first agreed by the parties that the respective solicitors should state to the master the evidence they respectively relied upon and abide the recommendations the master should make, and consent to a decree in accordance therewith. Accordingly, the master filed his recommendations dated April 22d 1926, and filed in the cause April 27th, 1926.
Subsequently, the respective parties determined to have a formal hearing before the master on testimony of witnesses. That testimony has been taken and arguments made before the master, and a report has been filed by him dated April 7th, 1927, based upon the testimony. Exceptions to the conclusions reached by the master in that report have been filed by respondent and heard by me on briefs submitted by the respective solicitors.
In the master's first report he made the following recommendations:
"1. That the permanent custody of said child be awarded to the respondent.
"2. That the petitioner have the right and privilege of having the partial custody of said child on the first and third Sunday in each month, between the hours of two P.M. and eight P.M. [I expressed some hesitancy in making the hour eight P.M. because of the possible bed time hour of the child, but both counsel seemed to be agreeable to this hour], the petitioner to call for and return the child to the said home of its mother, and that during said partial custody, the temporary home of the child should be the home of the parents *Page 483 
of the petitioner, No. 1496 North Fifty-third street, Philadelphia, Pennsylvania, and the petitioner during such partial custody to have the privilege of taking said child to any proper place or places, provided that it is not brought in contact with the present wife of the petitioner.
"3. That the petitioner on all other Sundays during the year have the right and privilege of visiting said child at its mother's said home between the hours of two P.M. and four P.M. and remaining alone with it, or if he so desire, to take it out walking or automobiling during said hours.
"4. That the petitioner have the right of visitation of said child at its said mother's said home at all other times upon reasonable appointments for the same, and that the utmost privilege that can be extended to a father be accorded him in seeing said child, subject to the needs, proper care, welfare and proper rearing of said child.
"5. That the petitioner give bond in the sum of $1,000 conditioned for the proper returning of said child, when taken by him either within or without this state, and for the compliance by him of the order of this court.
"6. That these recommendations be subject to modification or enlargement, upon the application of either party, based upon new matter. The hours mentioned in these recommendations from May 1st to September 1st, in each year, is based upon daylight saving time, and the balance of the year upon standard time."
In the second or formal report of the master, made after hearing the testimony, he advises as follows:
"After a careful consideration of the testimony I confirm the recommendation contained in my former report, except that I recommend that the partial custody of the infant child be changed from the home of the petitioner's parents at No. 1496 Fifty-third street, Philadelphia, Pennsylvania, to the home of the petitioner at No. 112 Elmwood avenue, Narbeth, Pennsylvania, and that there be eliminated the restriction that the child be not brought in contact with the petitioner's wife."
I have carefully examined the testimony and briefs and *Page 484 
am convinced that a decree should be made in conformity to the final report of the master.
The opposition of Mrs. Craig to her former husband taking the child to his present home is based upon the claim that the petitioner, her former husband, is not a fit person to have custody of the child, even during the brief periods specified by the master; and that the present wife of petitioner is in like manner unfit to come in contact with the child.
A difficulty is encountered by defendant which seems almost, if not quite, insuperable. In 1925, petitioner procured a decree of divorce against defendant in Philadelphia on the ground of desertion. In that suit defendant filed an answer but did not defend. Giving full faith and credit to that decree of a sister state it must be assumed that defendant's desertion of petitioner was wrongful and without justifiable cause. Defendant has not challenged the validity or force of that decree in any direct proceeding for that purpose, but now seeks by way of defense to the present petition to establish as a fact that petitioner, up to the time the divorce was awarded to him, was what she defines as a moral degenerate, and hence her desertion was justified, and petitioner is accordingly unfit to enjoy the custody of the child of their marriage even for a brief period.
But notwithstanding the conclusive force to be attributed to that decree as between the parties, I have carefully considered the testimony in the endeavor to ascertain how the best interests of the child will be best served.
The testimony discloses that pending that divorce suit an agreement was made between the parties, settling their property rights in the event of the court granting the divorce. That agreement also contained the following stipulation touching the custody of the child, should the divorce be granted:
"It is agreed between the husband and wife that the wife shall have the custody of said minor child until it reaches the age of twenty-one years, but the husband may visit and see said child, and if he so desires, may take it for over a week-end or some other day that may be satisfactory to both the parties to this agreement, and at such reasonable times as he may so desire, provided the same is satisfactory and convenient to the wife." *Page 485 
That stipulation defendant now refuses to conform to, and it will be noted that the temporary custody recommended by the master for petitioner is much less than that apparently contemplated by the stipulation.
Petitioner married his present wife almost immediately after he procured his divorce. It is not claimed that since that time his conduct has been reprehensible, and the evidence discloses that since that time petitioner and his present wife have been leading a quiet and respectable life in a home well conditioned.
It is evident that petitioner and his present wife had become lovers prior to the divorce; their immediate marriage after divorce is sufficient indication of that. But it cannot be said that the evidence justified a finding that they were guilty of criminal conduct. The testimony of defendant, if accepted in its entirety, discloses petitioner as abnormal in his sexual tendencies and base in some of his conduct touching sexual matters; but from the very nature of the charges much of that testimony of defendant cannot be corroborated, and is denied by petitioner.
Defendant also claims that the real reason petitioner seeks the society of his child is to annoy defendant; that I am unable to believe.
I am convinced that the best interest of the child will be served by a course calculated to foster a growth of affection between the child and her father, and I am unable to believe that any reason exists why petitioner should not enjoy the society of his child in his own home on the Saturday afternoons advised by the master. Of course, if weather conditions are unfit for petitioner to take the child in his car to his home on any of the afternoons specified, he will be expected to exercise a sane judgment by foregoing that privilege on such an occasion.
A decree will be advised in accordance with the master's report. *Page 486